USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 06 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERNEST WEST,

Plaintiff,

-v-

WARDEN LOUIS RIVERA, DEPUTY SUPT. SECURITY CANTY, CAPTAIN MATTHEW

Defendants.

No. 13-CV-3965 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

*Pro se* Plaintiff Ernest West brings this action pursuant to 42 U.S.C. § 1983 against New York City Department of Corrections ("DOC") officers Warden Rivera, Deputy Superintendent Canty, and Captain Matthew, for alleged violations of his First and Fourteenth Amendment rights regarding the delivery and pickup of mail at his housing area in the Anna M. Kross Center ("AMKC") on Rikers Island. This is the second of two identical complaints filed one week a part in this Court by different Plaintiffs.[1] Before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons set forth below, the motion to dismiss is granted, although Plaintiff will be given the opportunity to amend his Complaint, if he has a proper basis for doing so.

[1] See Simon v. Rivera, *et al.*, 13 Civ. 3959 (RA) (filed May 31, 2013; dismissed for failure to prosecute and closed November 15, 2013). The two complaints are identical except that Plaintiff substituted his own name and identification number on the instant complaint and attached a grievance form he filed in 2013. (See Compl. at 1, 7, Ex. A.)

## BACKGROUND[2]

On January 12, 2013, Plaintiff was admitted to the AMKC, where he was housed in unit West 17 on the Lower A side. (Compl. at 2.) Upon his arrival, Plaintiff learned that mail was not being delivered to the facility on Mondays and/or during the 3:00 p.m. to 11:00 p.m. shift because of a "No Pass Policy" adopted by Warden Rivera and Deputy Superintendent Canty. (Compl. at 2-3.) Plaintiff claims that the policy violated his First, Eighth, and Fourteenth Amendment rights because it unlawfully prevented him from being able to "express" himself to his family through the mail, and denied him "access to the courts in a timely fashion in filing motions in [his] behalf in [his] criminal defense case." (Id. at 3.) The policy allegedly "barred" him from "receiving family letters and sentimental items" like photos and holiday cards, and hindered his ability to "educate" his children and keep them from "being psychologically damaged mentally in their growth." As a result of these restrictions, he claims to have suffered high blood pressure, "strain on [his] heart," sleepless nights, migraine headaches, "extreme emotional stress," "fear for [his] life," and anxiety on the part of his family members. (Id.) For these injuries, Plaintiff seeks $2.5 million dollars in compensatory damages, $2.5 million dollars in punitive damages, and injunctive relief. (Id. at 5.)

Plaintiff did not grieve his claims through the DOC grievance procedure because, he asserts, no such procedure was available to him. (Compl. at 4.)[3] In lieu of that procedure, he made verbal complaints to Captain Matthew and Captain Francis-Gumbs, and sought assistance

---

[2] The facts are taken from Plaintiff's Complaint are assumed to be true for the purposes of this motion to dismiss.

[3] Despite such assertion, Plaintiff attached a completed DOC grievance form, dated May 23, 2013, to his Complaint. (Compl. Ex. A.) In any event, Plaintiff is not required to plead exhaustion in the Complaint and Defendants do not assert failure to exhaust as an affirmative defense. See Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013) (citing Jones v. Block, 549 U.S. 199, 216 (2007)).

from Dale Wilker at the Prisoner's Rights Project, who purportedly contacted the Board of Corrections on Plaintiff's behalf. (Id.)

On June 7, 2013—eight days after Luther Simon filed his parallel case—Plaintiff filed this action *in forma pauperis*. (Dkt. 1, 2.) In his Complaint, Plaintiff appears to assert First and Fourteenth Amendment claims for access to the courts and the free flow of mail based on the restrictions to mail delivery and pickup under the prison's "No Pass Policy."[4]

The Complaint named five Defendants: Warden Rivera, Deputy Superintendent Canty, Captain Matthew, C.O. Morgan, and Captain Francis-Gumbs. After Plaintiff failed to serve Defendants Morgan and Francis-Gumbs, they were dismissed by the Court's Order on July 24, 2014. (Dkt. 38.) The remaining Defendants now move to dismiss the Complaint, arguing that (1) Plaintiff's allegations regarding mail delivery do not give rise to a cognizable constitutional claim, and (2) Plaintiff has failed to allege the personal involvement of any of the Defendants in the alleged violations. (Def. Mem. of Law in Support of Motion to Dismiss ("Def. Mem.) (Dkt. 39).)

On August 26, 2014, Plaintiff filed an opposition to the motion. (Pl. Mem. of Law in Opp. 1 ("Pl. Mem. 1") (Dkt. 44).)[5] On September 26, 2014, he filed a second opposition brief (Pl. Mem. of Law in Opp. 2 ("Pl. Mem. 2") (Dkt. 45).) In this submission, Plaintiff requests permission to amend the Complaint and provides new information about his claims: specifically, he alleges that he sent a petition for *habeas corpus* relief to the "R.J.I. Center" in April and May

[4] Although Plaintiff's last letter to the Court indicated that he sought relief for an "Equal protection" violation (Pl. Letter (Dkt. 46)), neither the Complaint nor his other submissions contain any discussion of an Equal Protection claim.

[5] This opposition was written on a "Notice of Motion" form and was therefore docketed as a "Motion to Review the Complaint."

of 2013 and did not receive a response. (See Pl. Mem 2 at 7-8, 10, 13.) He claims that he would have had a hearing at the R.J.I. Center if the petition had been received. (Id. at 8.) According to Plaintiff, "[C]aptain Cant[y] spoke with Mr. West, in a group meeting on [J]une[] 3rd or 4th[] of 2013," and Canty told him that "they are aw[a]re of it." (Id. at 8.) Plaintiff also alleges that Captain Matthew was aw[are] of the "problem concerning mail or Legal Mail," but did not "wan[]t to remedy it." (Id. at 16.)

On December 31, 2014, Plaintiff submitted a letter to the Court requesting that his Complaint not be dismissed. (Dkt. 46.) Although his last two submissions were untimely and filed without leave from the Court, in light of his *pro se* status, the Court has liberally construed the submissions and considered the arguments presented therein.

## LEGAL STANDARD

In reviewing Defendants' motions to dismiss for failure to state a claim, the Court accepts as true all of the factual allegations in the SAC. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). A plaintiff has the "responsibility to set forth in the complaint facts that state a claim that is plausible on its face." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

With *pro se* complaints, however, the Court has a duty to construe the complaints liberally and examine the allegations with "special solicitude," interpreting the complaint to "raise the strongest claims that it suggests." Id. (internal quotations and alterations omitted). Accordingly, "when a liberal reading of the complaint gives any indication that a valid claim

might be stated," a *pro se* plaintiff will be granted at least one opportunity to amend his complaint. Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d. Cir. 2010)).

## DISCUSSION

### I. Access to the Courts

Prison inmates' constitutional right to access to the courts under the First and Fourteenth Amendments includes the right to send and receive legal mail. See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); Bounds v. Smith, 430 U.S. 817, 825 (1977). To establish an access to the courts claim, a plaintiff must show an actual injury; in other words, the plaintiff must "demonstrate that the prison hindered his efforts to pursue a non-frivolous legal or administrative action." Guarneri v. West, 495 F. App'x 142, 144 (2d Cir. 2011); Lewis v. Casey, 518 U.S. 343, 351 (1996). "Mere 'delay in being able to work on one's legal action or communicate with the courts,'" however, "does not rise to the level of a constitutional violation." Davis, 320 F.3d at 352 (quoting Jermosen v. Coughlin, 877 F.Supp. 864, 871 (S.D.N.Y. 1995)). See also Cancel v. Goord, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").

Defendants argue that Plaintiff has not alleged a cognizable injury in connection with his access to the courts claim. (Def. Mem. at 5-6.) The Court agrees. Although Plaintiff generally alleges that the prison's policy "denie[d] [his] access to the courts in a timely fashion in filing motions in . . . [his] criminal defense case" (Compl. at 3), he makes no reference to particular

motions, legal briefs, or other legal documents that he attempted to mail, or any specific instances of delay he encountered in receiving particular legal documents. Moreover, in the Complaint, Plaintiff does not allege an actual injury resulting from such delay, such as an adverse ruling, sanction, or dismissal. See Cancel, 2001 WL 303713, at *4; Bellezza v. Holland, 730 F.Supp.2d 311, 316 (S.D.N.Y. 2010). Plaintiff therefore fails to plausibly allege a violation of his right of access to the courts.

Nevertheless, while the Complaint does not recount any specific violations, Plaintiff's second opposition brief provides additional factual support for the claim. Plaintiff claims to have submitted a *habeas corpus* petition as "Certif[i]ed Legal Mail" on April 26, 2013 and May 2, 2014 but he did not receive a response; he asserts that he would have received a hearing if the petition had been received. (Pl. Mem 2 at 8, 10.) Because these allegations were not included in the Complaint, they may not be considered by the Court for the purposes of this motion to dismiss. See, e.g., Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Brown v. City of New York, No. 14 Civ. 2668 (PAE), 2014 WL 5394962, at *1 n.1 (S.D.N.Y. Oct. 23, 2014) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citing Weir v. City of New York, No. 05 Civ. 9268 (DFE), 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008)). Read in conjunction with the facts alleged in the Complaint, however, these allegations suggest that amendment may not be futile. See Nielsen v. Rabin, 746 F.3d 58, 64 (2d Cir. 2014) (reversing district court decision to dismiss without leave to amend where facts raised in *pro se* plaintiff's opposition brief set forth factual basis for claim).

Therefore, to the extent that Plaintiff seeks to assert a claim based on his *habeas corpus* petition, he may amend his Complaint to include such allegations. As explained above, to state

an access to the courts claim, Plaintiff must allege facts demonstrating that the named Defendants "hindered his efforts" in pursuing a non-frivolous claim. West, 495 F. App'x at 144. That means that Plaintiff must specify the basis of his *habeas corpus* petition so that the Court may confirm that it is non-frivolous, see id., and show that Defendants' conduct resulted in a cognizable injury—that is, not mere delay, but actual prejudice to his claim, see Davis, 320 F.3d at 352. To attempt to satisfy these requirements, Plaintiff should include a description of the claims in his petition, the court to which he mailed the petition, the case number assigned to the matter, and, to the extent he has received any further communications or court orders regarding the petition, a description thereof.

## II. Free Flow of Mail

In addition to a guarantee of access to the courts, inmates also have a general right to the "free flow of incoming and outgoing mail" under the First Amendment. Davis, 320 F.3d at 351 (citing Heimerle v. Attorney General, 753 F.2d 10, 12-13 (2d Cir. 1985); Hudson v. Greiner, No. 99 Civ. 12339 (LAP), 2000 WL 1838324, at *5 (S.D.N.Y. Dec.13, 2000)). "Restrictions on prisoners' mail are justified only if they 'further[] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" Id. (quoting Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)); Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012). In deference to this balance of interests, "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Davis, 320 F.3d at 351 (citations omitted).

With regard to legal mail, "'an isolated incident of mail tampering is usually insufficient

to establish a constitutional violation.'" Ahlers, 684 F.3d at 64 (quoting Davis, 320 F.3d at 351). "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" Id. In this context, the justification for the restriction must be more than a "general prison security interest." Cancel, 2001 WL 303713, at *7. By contrast, interference with non-legal mail is more "readily justifiable." Ahlers, 684 F.3d at 64. Courts have thus found that "an inmate must show a "pattern and practice of interference that is not justified by any legitimate penological concern," including a "general security concern." Cancel, 2001 WL 303713, at *6. Allegations of "relatively short term delays, absent any further allegations indicating that the mail was stolen or tampered with, do not alone create a cause of action." Cancel, 2002 WL 171698, at *3 (S.D.N.Y. Feb. 4, 2002) (granting motion to dismiss where alleged delays ranged from two to six weeks); see also Ahlers, 684 F.3d at 64 (affirming dismissal of claim alleging eleven interferences with non-legal mail).

Plaintiff has failed to plausibly allege a free flow of mail claim based on either legal or non-legal mail. Although he generally alleges that his mail was not delivered on Mondays or during the 3:00 p.m. to 11:00 p.m. shift, Plaintiff cites no instances in which there was a failure to deliver his mail—legal or non-legal—for an unreasonable period of time. Similarly, he alleges no instances in which Defendants tampered with either his outgoing or incoming mail. In fact, Plaintiff's Complaint contains no references whatsoever to any specific pieces of mail. These allegations simply do not rise to the level of unlawful interference with the free flow of mail. See, e.g., Davis, 320 F.3d at 352 (affirming dismissal where plaintiff failed to allege an ongoing practice of prison officials tampering with his legal mail or any harm suffered by him as a result); Harris v. Fischer, No. 11 Civ. 6260 (CM), 2014 WL 3859242, at *25 (S.D.N.Y. Aug. 1,

2014) (dismissing claim where plaintiff alleged only short delays in receiving non-legal mail).

Furthermore, Plaintiff fails to state a claim for relief based on the mail policy itself.[6] In evaluating the reasonableness of a prison restriction, courts consider several factors: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) "the challenged regulation in relation to proposed alternatives." Ahlers, 684 F.3d at 65 (citing Johnson v. Goord, 445 F.3d 532, 535 (2d Cir. 2006)).

Here, although Plaintiff alleges that his injuries resulted from the prison's policy, he has not provided any information about the policy that would suggest that it was unreasonable. Indeed, the Complaint contains no description of the policy at all beyond the mail delivery schedule. Plaintiff is advised that a policy that merely limits the time of mail delivery to certain days and times is unlikely to raise a constitutional concern; in any event, Plaintiff's bare allegations do not permit the Court to properly evaluate the policy under Ahlers. Plaintiff has thus failed to plausibly allege that the mail policy is unlawful.

As with his access to the courts claim, however, Plaintiff will be granted leave to amend his Complaint to include more specific allegations of mail interference. If Plaintiff opts to amend the Complaint, he should include not only the allegations relating to his *habeas* petition,

[6] Because Plaintiff's Complaint does not name the City as a defendant, his policy-based claim is limited to the actions of the named individual defendants. See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

but also any other instances in which his outgoing mail was not sent or his incoming mail was not received as a result of Defendants' conduct because, as explained above, an "isolated incident" of interference, even with legal mail, is usually insufficient to establish an actionable violation. Ahlers, 684 F.3d at 64. Finally, to the extent Plaintiff bases this claim on the mail policy described in the Complaint, Plaintiff should also provide additional details about the policy, as well as examples of the delays in his outgoing and incoming mail that resulted from the policy's restrictions on mail delivery and pickup.

### III. Personal Involvement Requirement

Because Plaintiff has failed to plausibly allege a constitutional violation, the Court need not reach Defendants' argument that he failed to adequately allege the personal involvement of the Defendants in the alleged unconstitutional conduct. The Court reminds Plaintiff, however, that personal involvement is a requirement in all § 1983 lawsuits, and if he decides to file an Amended Complaint, he must allege how each individual Defendant was personally involved in the conduct leading to his injuries. See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001); see also Bellezza, 730 F.Supp.2d at 317 (dismissing mail interference claim where plaintiff alleged only that the defendants "condoned" the alleged confiscation of a settlement check).

## CONCLUSION

In sum, Plaintiff has failed to plausibly allege that Defendants violated his First and Fourteenth Amendment rights to access to the courts and the free flow of mail. Defendants' motion to dismiss is thus granted. Plaintiff will be granted an opportunity to amend his Complaint to include the factual allegations contained in his opposition brief as well as any

additional facts relevant to his claims. See Grullon, 720 F.3d at 139-40 (2d Cir. 2013). Plaintiff is cautioned, however, that if he chooses to file an Amended Complaint but fails to allege the necessary factual predicate for his claims, his action will be dismissed with prejudice and he will be barred from refiling it.

Accordingly, the Complaint is dismissed without prejudice to the filing of an Amended Complaint by May 5, 2015. If no Amended Complaint is filed by that date, this dismissal will become final. The Clerk of the Court is respectfully directed to close items 39 and 44 on the docket.

SO ORDERED.

Dated: March 6, 2015
New York, New York

Ronnie Abrams
United States District Judge